***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments on appeal. The Full Commission hereby AFFIRMS the decision of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. An employee-employer relationship existed between the parties on 27 August 2001.
3. The carrier on the risk at the time of plaintiff's alleged injury by accident was Zurich Insurance Company.
4. Plaintiff's average weekly wage will be determined from a Form 22 Wage Chart, but the parties stipulate that it is sufficient to yield the maximum weekly compensation rate for 2001 of $620.00.
5. The issues for determination are:
a. Whether plaintiff suffered a compensable injury by accident?
b. If so, whether plaintiff suffered any disability as a result?
c. Whether defendants are entitled to a credit for unemployment benefits paid to plaintiff?
d. Whether plaintiff is entitled to attorney's fees for defendants' failure to comply with N.C. Gen. Stat. § 97-18(d) and the unreasonable defense of plaintiff's claim?
7. The parties stipulated the following documentary evidence:
a. Plaintiff's medical records were entered as Stipulated Exhibit No. 1.
b. Industrial Commission forms and files were entered as Stipulated Exhibit No. 2.
c. Discovery responses were entered as Stipulated Exhibit No.
d. A printout of unemployment benefits was entered as Stipulated Exhibit No. 4.
e. Subsequent to the hearing and at the Order of former Deputy Commissioner Jones, defendants submitted an Amended Exhibit No. 2 containing jobs available with defendant-employer, descriptions of the jobs, mileage from Wilmington, North Carolina to each job site and the per diem payment for each job.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before former Deputy Commissioner Jones, plaintiff was 21 years old. He had completed the ninth grade and received his GED in 2001.
2. Plaintiff began employment with defendant-employer as a millwright in August 2001. His duties included aligning motors, setting duct work and aligning and installing conveyers. Plaintiff was aware that as a millwright, he was subject to being laid off at the completion of the project.
3. On 27 August 2001, plaintiff was finishing his workday as a millwright when he stepped down out of a rock burner (furnace) to a path approximately two feet below. Plaintiff twisted to the right as he stepped in order to land on the path. When his right foot reached the ground, plaintiff felt his lower back pop five to six times and a burning sensation in his legs. There were no witnesses to this incident.
4. Plaintiff reported the incident to his foreman, Willard Storms, to two co-workers, Floyd Evers and Tony Smith, and then reported to Frank Sylvae at the safety trailer on the job site. Mr. Sylvae provided plaintiff with medication. Plaintiff continued to experience pain in his lower back and right leg that evening. He returned to work the next day and reported his continuing pain to Mr. Sylvae who suggested that plaintiff was suffering from a muscle strain and should go to work and let the problem take care of itself. Plaintiff continued to work following the incident, although he continued to experience pain in his back.
5. Although Mr. Sylvae worked for another company on the project and was not employed by defendant-employer, he was the only safety manager on the job site on 27 August 2001. When plaintiff was hired he was provided with a safety orientation program provided by Mr. Sylvae. At that time, plaintiff was instructed to bring all job-site injuries to the attention of Mr. Sylvae. Subsequent to 27 August 2001, Bob Phillips was installed on the site as a safety manager for defendant-employer.
6. No accident forms were provided to plaintiff and no forms were filed by defendant-employer. At the hearing before former Deputy Commissioner Jones, defendants were fined $200.00 for their failure to file a Form 19, Form 60 or Form 61.
7. Plaintiff worked 40 to 50 hours per week from 27 August 2001 until 6 November 2001. While plaintiff continued to experience back pain, he was able to perform his job.
8. On 6 November 2001, plaintiff went to Bob Phillips and requested to see a doctor for his continuing back pain. Mr. Phillips took plaintiff to Community Family Practice and Obstetrics in a company truck.
9. Plaintiff was given an x-ray of his lumbar spine, which was read as normal. He was diagnosed with a low back strain and provided with medications. He was also given restrictions of no lifting more than ten pounds, to alternate standing and walking as needed and no repetitive motions.
10. Plaintiff returned to work in a light duty position of fire watch. In this position, plaintiff was required to watch the grinding process and look for sparks that might ignite and result in a fire. Plaintiff continued to earn the same rate of pay that he earned on full duty. Plaintiff was later moved from the job of fire watch and returned to working with the millwright crew as an assistant, handing them tools and aligning ductwork and conveyors. Plaintiff was able to perform both of these positions without difficulty.
11. Plaintiff was later moved by Supervisor Randy Gardner to a sweeping job on the cleaning crew. The sweeping aggravated plaintiff's back, and he performed the job for approximately four hours. On 30 November 2001, plaintiff was laid off along with a number of other employees as part of an overall reduction of workers as the job neared completion. Plaintiff's layoff was not due to his work-related injury.
12. Plaintiff applied for and received 36 weeks of unemployment following the layoff in the weekly amount of $375.00, for a total amount of $13,500.00.
13. Plaintiff continued to treat with Dr. Robin Whitten at Community Family Medicine and received physical therapy with little success in relieving his back pain. On 12 January 2002, Dr. Whitten referred plaintiff to Southeastern Regional Medical Center for an MRI of the lumbar spine. The MRI was performed on 18 January 2002, and showed mild disc desiccation and mild disc bulge at L5-S1.
14. On 2 February 2002, plaintiff was referred to neurosurgeon Dr. Charles Hayworth. Dr. Hayworth examined plaintiff and opined that plaintiff's physical evaluation was normal without symptomology or tenderness. Dr. Hayworth also reviewed plaintiff's MRI and x-rays and opined that plaintiff's studies were essentially normal except for some very mild degenerative disc disease at L5-S1.
15. Dr. Hayworth determined that plaintiff's condition was consistent with the normal aging process and that plaintiff was not a candidate for surgery. He further opined that the 27 August 2001 incident described by plaintiff did not cause any specific demonstrable, anatomic injury to plaintiff's back and that plaintiff could return to work without restrictions. Dr. Hayworth did not treat plaintiff further.
16. Following the treatment by Dr. Hayworth, defendants ceased paying for medical treatment and did not authorize any further treatment. Due to continuing pain, plaintiff chose to present to Dr. Landon B. Anderson, an orthopedist in Wilmington, North Carolina, on 12 June 2002. Dr. Anderson reviewed plaintiff's films and performed a physical examination. Plaintiff's examination was essentially normal, and Dr. Anderson diagnosed plaintiff with a lumbosacral strain and recommended physical therapy. He placed plaintiff under work restrictions of no lifting more than 25 pounds and no repetitive bending.
17. Plaintiff did not participate in physical therapy due to the cost, nor could he afford anti-inflammatory medications. He failed to improve over the next few months and Dr. Anderson opined on 18 September 2002 that plaintiff would not improve until he was able to obtain medication and physical therapy.
18. Plaintiff continued to treat with Dr. Anderson until 15 January 2003. At that time, Dr. Anderson noted that plaintiff had shown no improvement and was still unable to afford the therapy necessary to assist in his recovery. Dr. Anderson opined that absent further treatment, plaintiff had reached maximum medical improvement. Dr. Anderson maintained the work restrictions imposed on 12 June 2002, indefinitely; however, he also noted that the restrictions were meaningless because he knew that plaintiff wasn't working at that time. He further opined that the 27 August 2001 injury described by plaintiff was the cause of plaintiff's current condition.
19. Based upon numerous visits by plaintiff to Dr. Anderson as opposed to a single examination by Dr. Hayworth, the opinion of Dr. Anderson regarding the causal connection between the 27 August 2001 incident and plaintiff's current condition is given greater weight than that of Dr. Hayworth.
20. Both Dr. Hayworth and Dr. Anderson opined that plaintiff was capable of returning to work. Defendants presented evidence that shows that upon being laid off, an employee is instructed to call in to check for available jobs on other projects. Plaintiff admitted that he was aware of this policy, but that he did not attempt to call defendant-employer to see if any jobs were available, even though he knew that defendant-employer typically had jobs that were within plaintiff's restrictions.
21. Defendants presented Dr. Hayworth with job descriptions for seven positions available with defendant-employer, including (1) hole watch, (2) mechanic 2nd class, (3) laborer, (4) forklift operator, (5) tool room attendant, (6) helper 2nd class, and (7) safety audit. Dr. Hayworth determined that all were within plaintiff's restrictions. Dr. Anderson was questioned regarding plaintiff's ability to operate small hand and power tools and occasional tasks such as sweeping, and he opined that such jobs would be within plaintiff's restrictions.
22. Plaintiff suffered an injury as the result of a specific traumatic incident of the work place that occurred on 27 August 2001. Plaintiff provided defendants with adequate notice of the incident on the same date. As a result of the specific traumatic incident, plaintiff has a continuing condition of pain in his lower back that requires physical therapy and medication in order to improve.
23. Plaintiff was laid off from his job with defendant-employer for reasons unrelated to his injury by specific traumatic incident on 27 August 2001. Plaintiff has not shown that he is disabled from work as defined by the Act as a result of the specific traumatic incident of 27 August 2001.
24. Plaintiff has not reached maximum medical improvement, but requires physical therapy and additional medication prior to obtaining a rating, if any, of permanent partial impairment to his back as a result of the 27 August 2001 incident.
25. According to a Form 22 and payroll records submitted by defendants, plaintiff's applicable average wage was $935.00 per week.
26. The defense of this claim was not unreasonable.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by specific traumatic incident at the workplace on 27 August 2001. N.C. Gen. Stat. § 97-2(6).
2. As a result of the injury plaintiff is entitled to any and all medical treatment, which may reasonably be required to provide effect a cure or provide relief, including physical therapy and work hardening upon recommendation of his treating physician. N.C. Gen. Stat. § 97-2(19).
3. In order for plaintiff to be eligible for indemnity compensation as a result of the injury sustained on 27 August 2001, he must show (1) that he is incapable of earning the same wages in the same employment, (2) that he is incapable of earning the same wages in any other employment, and (3) his incapacity to earn was caused by the injury. Arrington v.Texfi Indus., 123 N.C. App. 476, 473 S.E.2d 403 (1996).
4. Plaintiff was laid off for reasons unrelated to his injury. The expert medical testimony shows that plaintiff is capable of work and the evidence demonstrates that jobs with defendant-employer are available within plaintiff's restrictions. The evidence further shows that although plaintiff knew that he could call defendant-employer regarding a return to work on other projects, he purposefully did not make the inquiry. Based upon this evidence, plaintiff is not eligible for indemnity compensation under the Act. N.C. Gen. Stat. § 97-2.
5. In this case, defendants failed to file a Form 19, Form 60 or Form 61. Rule 801(2) of the Workers' Compensation Rules provides that upon the failure of a party to timely file forms as required by either the Rules or pursuant to the Act, the Commission may impose appropriate sanctions. The Commission finds that it is appropriate to fine the defendants the $200.00 Deputy Commissioner Jones imposed at the hearing as well as to award plaintiff's attorney's fees to be paid by defendants upon the Commission's receipt of an accounting by plaintiff's counsel as to the time spent in the prosecution of plaintiff's claim. No further sanctions are appropriate.
6. Plaintiff's average wage at the time of the compensable injury was $935.00, which yields the maximum 2001 compensation rate at $620.00 per week.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff's medical expenses incurred or to be incurred in the future, including but not limited to the treatment provided by Dr. Anderson and Miller.
2. As plaintiff has not reached maximum medical improvement, the Commission does not address this issue. However, upon plaintiff reaching maximum medical improvement and in the event that the parties should not be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
3. Because of defendants' Rules violations, defendants were appropriately fined $200.00 by the Deputy Commissioner and the plaintiff is entitled to have plaintiff's attorney's fees to be paid by defendants upon the Commission's receipt of an accounting by plaintiff's counsel.
4. Defendant shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/________________ BERNADINE BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER